IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Alonzo R. Brinkley, II, #271143, ) | |
| ) | Civil Action No. 6:08-308-JFA-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jon Ozmint, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding with the assistance of counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC"), as the result of his York County, South Carolina, armed robbery conviction. The York County Grand Jury indicted the petitioner at the June 2000 term of court for armed robbery (00-GS-46-2056); unlawful carrying of a pistol (00-GS-46-2057); entering a bank with intent to steal (00-GS-46-2058); failure to stop for a blue light (00-GS-46-2059), resisting arrest (00-GS-46-2060); two counts of assault and battery with intent to kill (ABIK) (00-GS-46-2061 and 00-GS-46-2062); possession of a stolen vehicle (00-GS-46-2063); and possession of a firearm

during the commission of a violent crime (00-GS-46-2064). Attorney Jack B. Swerling represented him on these charges.

On November 30, 2000, the petitioner pleaded guilty before the Honorable John C. Hayes, III, to armed robbery, unlawful carrying of a pistol, failure to stop for a blue light, resisting arrest, two counts of assault and battery of a high and aggravated nature (ABHAN), possession of a stolen vehicle and possession of a firearm during the commission of a violent crime. Judge Hayes sentenced him to 20 years for armed robbery, one year for unlawful carrying of a pistol, three years for failure to stop for a blue light, one year for resisting arrest, 10 years for each count of assault and battery of a high and aggravated nature, 10 years for possession of a stolen vehicle, and five years for possession of a firearm during the commission of a violent crime. Judge Hayes ordered that all of the sentences were to be concurrent.

The petitioner timely served and filed a notice of appeal. Attorney Patricia Greene Pegram represented him on appeal. On May 29, 2001, Ms. Pegram filed a final *Anders* brief of appellant on the petitioner's behalf and petitioned to be relieved as counsel.[1] The only issue raised in the *Anders* brief was stated as follows :

> WAS THE ISSUE OF WHETHER MR. BRINKLEY'S PLEA WAS KNOWING AND INTELLIGENT OR ANY OTHER ISSUE PRESERVED FOR DIRECT APPEAL?

Final *Anders* brief of appellant at p. 1.

On May 1, 2002, the South Carolina Court of Appeals filed an unpublished opinion dismissing the petitioner's appeal and granting counsel's petition to be relieved. *State v. Brinkley*, 2002-UP-314 (S.C. Ct.App., May 1, 2002). The South Carolina Court of Appeals sent the remittitur to the York County Clerk of Court on June 3, 2002.

---

[1]*Anders v. California*, 386 U.S. 738 (1967).

2

The petitioner thereafter filed a *pro se* post-conviction relief ("PCR") application (02-CP-46-2457) on October 22, 2002. *See Gary v. State*, 347 S.C. 627, 557 S.E.2d 662 (2001) (mailing of a PCR application does not constitute filing, for statute of limitations purposes. Rather, application is filed when received by the Clerk of Court). He alleged the following grounds for relief in his application:

> (1)   Ineffective assistance of counsel in that (1) defendants counsel at trial gave faulty advise on the length of sentence which included the defendant to plead guilty
>
>> a)   Counsel on this case provided incorrect information to the defendant concerning plea options, including information that the defendant receive 50 to 60 years incarceration. Based upon this incorrect advice, the defendant accepted a deal with the state capping his sentence at 20 years. Defendant would not have pled guilty had he been given accurate information by counsel. Additionally, counsel advised the defendant to plead guilty before he had received the results of critical neurological tests, which subsequently would have provided the defense on the merits to these charges. Counsel's advise to accept such a plea prior to the receipt of such testing constitutes ineffective assistance of counsel which is a violation of the defendant's sixth amendment rights under the United States Constitution.
>
> (2)   Counsel did [not] inform defendant ... in a timely manner and did not bring forth evidence or inform the defendant concerning a neurological condition which could have established a defense on the merits to the charges. Defendant would not have plead guilty but for counsels deficient performance. *COB Lockhart,* 474 U.S. 52 (1985). The Defendant pled guilty and sentencing was imposed in this case on November 30, 2000. (See Sentencing Sheet dated 30 Nov 2001 Attached hereto as Exhibit E). However, in a letter of November 29, 2002, counsel informed the solicitor that based on recent medical results, defendant had been suffering from brain damage which cause him to act in a matter which are not voluntary (See Attorney Jack Swerling's letter to Kevin S. Brackett, dated 29 November 2000 at page 3, paragraphs 3 and 4, attached hereto as Exhibit F).
>
>> a)   Neither Defendant nor his family were aware of the extent of this condition. On December 6, 2000, Dr. Gero Spencer Kraugh, MD, Columbia Neurologist,

3

>>provided a written report diagnosing defendant with a condition known as "Static encehpalopathy" caused by " repeated head and neck trauma."
>
>(3) Additionally, there exist evidence of material facts, not previously presented and heard, requires vacation of the conviction or sentence in the interest of justice.
>
>>a) [D]efendant answered in the plea inquiry that he had not ever been treated for mental or emotional disabilities. In fact, he had been extensively treated for such disabilities and this fact should have been brought to the attention of the court. Defendant had previously been treated by a Dr. Alan Towbin, a psychologist in New Haven, Connecticut. Dr. Towbin sent his notes to a psychologist working with Mr. Swerling, a Dr. Harold C. Morgan of Columbia. This fact should have been brought before the court but was not, further bolstering defendant's claim for ineffective assistance.

The State filed its return on March 1, 2004. The Honorable Lee S. Alford held an evidentiary hearing into the matter on July 20, 2004, at the Moss Justice Center in York County, South Carolina. The petitioner was present at the hearing; and attorney Donald M. Brown, Jr., represented him. Assistant Attorney General Arie D. Bax represented the State. The petitioner testified on his own behalf, He also presented then-Deputy Assistant Solicitor Kevin Brackett of the Sixteenth Circuit Solicitor's Office; Shelly Brinkley, the petitioner's mother; Allen Mills, his uncle; and Dr. Gero Spencer Kragh, a neurologist. Trial counsel, Mr. Swerling, testified on behalf of the State.

On October 7, 2004, Judge Alford filed an order in which he denied relief and dismissed the application with prejudice. The order of dismissal addressed the petitioner's claims that his plea was involuntary and trial counsel was ineffective because he failed to (1) properly inform the petitioner that the State had offered an alternative of a cap of 30 years on the straight up plea; and (2) present evidence concerning a neurological condition, from which the petitioner suffered, that rendered him guilty but mentally ill (GBMI).

4

A timely notice of appeal was served and filed. Again, Mr. Brown represented the petitioner in collateral appellate proceedings. The petitioner filed petition for writ of certiorari on March 23, 2005. The petitioner argued six issues on certiorari:

> (1) Did defense counsel violate the petitioner's Sixth Amendment Right to Effective Assistance of Counsel by making a mistake in his advice in calculating sentencing at the plea hearing in November of 2000?
>
> (2) Did defense counsel violate the petitioner's Sixth Amendment Right to Effective Assistance of Counsel by communicating incorrect information to Petitioner, then catching his mistake only minutes before the hearing, at a time when Petitioner was suffering from a brain condition and when he was unable to comprehend the sentencing advice?
>
> (3) Did defense counsel violate the petitioner's Sixth Amendment Right to Effective Assistance of Counsel by proceeding to sentencing without complete medical reports from Petitioner's physician, when such reports subsequently showed that the Petitioner was suffering from a brain condition that affected his ability to know right from wrong at the time of the underlying offenses?
>
> (4) Did the court err by summarily finding that Dr. Kragh was not credible, when it recognized Dr. Kragh as an expert and when there was no expert testimony presented by the State to contradict Dr. Kragh's expert opinion?
>
> (5) Was the credibility of Dr. Kragh an issue reserved primarily for the court during the PCR proceeding or is it an issue primarily for a jury during the trial on the merits?
>
> (6) Was the petitioner's Sixth Amendment Right to Effective Assistance of Counsel violated because a jury was not allowed to consider the testimony of Dr. Gerald Kragh?

The State filed a return to petition for writ of certiorari on July 27, 2005. The petitioner filed a reply on August 18, 2005.[2]

---

[2] Jurisdiction was transferred from the South Carolina Supreme Court to the South Carolina Court of Appeals after the parties had filed their pleadings.

5

The South Carolina Court of Appeals denied certiorari in an order filed on September 14, 2006. The South Carolina Court of Appeals denied a timely petition for rehearing on January 24, 2007.

On February 23, 2007, the petitioner filed a petition for writ of certiorari. The three questions presented in the petition for writ of certiorari were stated as follows:

> (1)    Did the Court of Appeals err in holding that Defense Counsel was not ineffective in failing to understand and communicate accurately the plea option?
>
> (2)    Did the Court of Appeals err in holding that Defense Counsel was not ineffective in failing to move for a continuance to receive Dr. Kragh's report?
>
> (3)    Did the Court of Appeals err in holding that Defense Counsel was not ineffective by leaving a valuable defense on the table thereby failing to render reasonably effective assistance under prevailing professional norms and that the petitioner-appellant was therefore prejudiced?

The State filed a return to petition for writ of certiorari on April 6, 2007.

The South Carolina Supreme Court filed an order denying certiorari on May 24, 2007. The South Carolina Court of Appeals also sent the remittitur to the York County Clerk of Court on May 24, 2007.

In his action now before this court, the petitioner raises the following allegations:

> **GROUND ONE:** Petitioner's defense counsel violated the Petitioner's Sixth Amendment Right to Effective Assistance of Counsel by making a mistake in his advice in calculating sentencing at the plea hearing in November of 2000.
>
> **GROUND TWO:** Petitioner's defense counsel violated the Petitioner's Sixth Amendment Right to Effective Assistance of Counsel by communicating incorrect information to Petitioner, then catching his mistake only minutes before the hearing, at a time when Petitioner was suffering from a brain condition and when he was unable to comprehend the sentencing advice.
>
> **GROUND THREE:** Petitioner's defense counsel violated the Petitioner's Sixth Amendment Right to Effective Assistance of

> Counsel by proceeding to sentencing without complete medical reports from Petitioners physician, when such reports subsequently showed that the Petitioner was suffering from a brain condition that affected his ability to distinguish his ability to know right from wrong at a time of the underlying offenses.
>
> **GROUND FOUR:** The court erred by summarily finding that Dr. Kraugh was not credible, when it recognized Dr. Kraugh as an expert and when there was no expert testimony presented by the State to contradict Dr. Kraugh's expert opinion.
>
> **GROUND FIVE:** The Petitioner's Sixth Amendment Right to Effective Assistance of Counsel violated because a jury was not allowed to consider the testimony of Dr. Gerald Kraugh.

(petition 2-3).

On April 21, 2008, the respondent filed a motion for summary judgment. On May 6, 2008, the petitioner, through his counsel, Donald M. Brown, Jr., filed a consent motion for extension of time to respond to the motion for summary judgment. By order of this court filed May 6, 2008, the deadline for the response was extended through May 23, 2008. The petitioner filed his response on May 23, 2008.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> Title 28, United States Code, Section 2244(d), provides:
>
> (1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## **ANALYSIS**

The respondent argues that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This court agrees. The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review." 28 U.S.C. § 2244(d)(1)(A). The petitioner's conviction became final on June 3, 2002, when the South Carolina Court of Appeals remitted the case to the trial court. Accordingly, the limitations period expired on June 3, 2003, unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2).

The petitioner filed a state PCR action (02-CP-46-2457) on October 22, 2002. At that point, 141 days of non-tolled time had run since the period of limitations began on June 3, 2002. Proceedings in the state PCR action concluded when the South Carolina Court of Appeals sent the remittitur to the York County Clerk of Court on May 24, 2007. At that point, statutory tolling for the state PCR action concluded, and the statute of limitations began to run again. The petitioner filed his petition for writ of habeas corpus in this court, through counsel, on January 30, 2008. This was 251 days after the state PCR proceedings concluded and 392 (141+251) days after his state court convictions became final. Accordingly, as the federal petition was filed after the one-year statute of limitations expired, the petition is untimely and should be dismissed.

The petitioner argues that the "indisputably . . . agreed upon date for 'conclusion of direct review'" of his case was May 24, 2007, and thus he had until May 24, 2008, to file his federal petition (pet. brief 4). The petitioner further argues, "Even the state conceded in its brief that 'Proceedings in 02-CP-46-2457 concluded with [sic] the state court of appeals sent the Remittitur to the York County Clerk of Court on May 24, 2007'" (pet. brief 3). The record before this court shows that *direct review* of the petitioner's case concluded on June 3, 2002, when the state court of appeals remitted the case to the trial court. It was the petitioner's PCR action (02-CP-46-2457) that concluded on May 24, 2007. Title 28, United States Code, Section 2244(d), is clear that the statute of limitations begins running at the conclusion of *direct review* and is statutorily tolled for any properly filed state PCR action. The one-year statute of limitations begins to run on the date the petitioner's

9

conviction becomes final, not at the end of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir.2000).

The petitioner, through counsel, argues that the state is attempting to wrongly "lop off" the 141 days between the conclusion of direct review of his case and the filing of his state PCR action (pet. brief 4-12). In support of the argument, the petitioner relies on *Carey v. Saffold*, 536 U.S. 214 (2002). In *Saffold*, the United States Supreme Court considered the question of whether an application for state collateral review is pending during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. *Id.* at 217. The Court answered the question in the affirmative. *Id.* at 227. It is unclear to this court how the ruling in *Saffold* is in any way applicable to the petitioner's case. This court has considered the petitioner's state PCR case to be pending from the date of its filing all the way through to the remittitur to the county clerk of court. The holding in *Carey* in no way applies to the time lapse between the conclusion of direct review of the petitioner's case and the filing of his state PCR action. The petitioner contends, "The States wants to argue, in effect, that the claim was 'not pending' in the state courts between June 2[3] [the conclusion of direct review] and October 22, 2002, [the date the state PCR action was filed] and therefore, in this interval of time, it wants to lop off 141 days from the full year guaranteed petitioner by 28 U.S.C. § 2244(d)(1)(A)" (pet. brief 6). This argument is meritless. The Eighth Circuit Court of Appeals considered just such an argument in *Boston v. Weber*, 525 F.3d 622 (8th Cir. 2008). The court stated as follows:

> Essentially, Boston argues for retroactive tolling, which effectively means the AEDPA statute of limitations would not begin to run until after the conclusion of the state habeas proceedings so long as the state habeas application is filed within one year of the judgment becoming final. . . .
> We disagree.

---

[3]This is evidently a typographical error by the petitioner as the case was remitted to the trial court on June 3, 2002.

10

> First, Boston's reliance on *Saffold* is misplaced. In *Saffold*, the Supreme Court held that, upon filing a state habeas application, the application is "pending" until the completion of the state collateral review process. 536 U.S. at 219-21. *Saffold* does not support Boston's argument because it did not address the time period between the date the judgment became final and the date of filing an application for state collateral review. To extend *Saffold* to exclude this time period as Boston seeks would thwart AEDPA's purpose to "reduce delays in the execution of state and federal criminal sentences," *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (quotation omitted), without furthering the goals of "comity, finality, and federalism," *Saffold*, 536 U.S. at 220 (quotation omitted).

*Id.* at 624-25 (parallel citations omitted).

The parties agree that equitable tolling is not an issue in this case (pet. brief 12; resp. brief 10-12). Based upon the foregoing, the petition is untimely and should be dismissed.

## CONCLUSION AND RECOMMENDATION

Being "mindful that Congress enacted § 2244(d) 'with the ... purpose of curbing the abuse of the statutory writ of habeas corpus,'" *Allen v. Mitchell*, 276 F.3d 183, 186 (4th Cir. 2001) (quoting *Crawley v. Catoe*, 257 F.3d 395, 400 (4th Cir. 2001)), this court concludes that the petition in this case was untimely filed, even when properly tolled.

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 7) be granted. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003), *cert. denied*, 541 U.S. 905 (2004) (affirming dismissal of petition filed one day late).

s/William M. Catoe
United States Magistrate Judge

February 5, 2009

Greenville, South Carolina